First case in the morning, call 419-358, people in the state of Illinois v. Anne v. Day. On behalf of the Avalon, Mrs. Diva Punjabi. On behalf of the athlete, Mrs. Mary Jacobs. Are you both ready to proceed? Yes. You may proceed when you're ready. May it please the court. Diva Punjabi from the Office of the State Appellate Defender. I represent Anne Day, the defendant appellant in this case. My intention today was to focus on arguments one and three of the brief, which were the arguments dealing with the, whether the value of the wrongfully taken property in this case was sufficiently proven, and whether the restitution award exceeded the actual out-of-pocket cost of the victim. But if the court has questions about the other arguments that were raised, I'm happy to try to answer those. What is the standard of review on argument number one? The standard of review is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution. Now, the theft statute provides that in dealing with theft cases, the value of the property is an element of the offense that must be proven as exceeding or not exceeding the specified value in the charge. Day argues on appeal that the state did not meet their burden with respect to this element of the offense for a number of reasons. First, the state did not prove that some of the funds at issue were not generated by Day's preexisting clients. Didn't Ms. Day take funds from this firm? Correct. She had taken...  Well, the problem is Teats had testified that she and Day... Well, they had agreed that they would split everything 50-50 after the firm's expenses were paid, but Teats had told Day that any work Day did on open files that Day had for preexisting clients that she had obtained prior to the inception of the law firm, that was all hers. She could keep 100 percent of the fees obtained from those clients. So the value of the funds that were wrongfully taken should have been offset by income generated by Day's preexisting clients, of which she was entitled to all of those funds. But the problem is, at trial, those clients were never specifically identified. There was no testimony regarding the specific duration of representation or specific amount of income generated for each of those preexisting clients. So the income generated by Day through her preexisting clients during the period at issue was not accounted for. Teats did testify that Day probably had about five preexisting clients that she brought into the law firm with her, but she couldn't identify who they were or how much income was generated by them. She, you know, she admitted that she had never kept a running list and hadn't paid attention to who those clients were. Did she give a date, though, by which the clients would have been done generating income? Correct. She speculated that Day probably should have been done wrapping up the work for those preexisting clients by, I think it was by the end of February of 2004. And the basis for her attributing the transactions in that timeframe to Day's preexisting clients was because, in her estimation, a real estate case doesn't take more than a couple of months on average. But, you know, and so she speculated if the specific transaction that the State was asking her about at trial took place in January or February of 2004, then the transaction could be attributable, could have been attributable to Day's, one of Day's preexisting clients. And, indeed, the Court did then disregard the transactions that took place in January and February of 2004 as part of the stolen funds. But, you know, the State here attempted to substitute speculation for hard evidence. Karen Tietz didn't actually know that, you know, preexisting clients A wrapped up in January of 2004 and preexisting client B wrapped up in February and this is how much income was generated from each of them. All of those details were missing. She just guessed based on her estimation of how long an average real estate case should take as to whether or not the transaction should have been attributed to Day's preexisting files. And I don't know that it's, I don't know that we can assume that the preexisting cases that Day worked on were average or typical real estate cases. I mean, all of us as attorneys have had cases that we at the outset thought would be easy, normal cases that turned into something very complicated. So we just don't know. The details were not there. I would submit that the income generated by Day through her preexisting clients during the period at issue was just not accounted for or proven beyond a reasonable doubt. And the evidence on this point was just based on pure guesswork and speculation. So if you don't have the specific amount of income generated by each of Day's preexisting clients, then the value of what was stolen was not proven beyond a reasonable doubt because we don't know with specificity what portion of those funds were attributable to Day's preexisting clients. It's an interesting theory, but all of the money was the firm's money by definition according to the partnership agreement, correct? It was the firm's money. It was the firm's money, but Teats had authorized that Day take out 100 percent of funds that were attributable to income generated by preexisting clients. She was clear on that. She said, I didn't care about any of that money. She could have all of it. Day also argued that the value of the property that was wrongfully taken was not sufficiently proven because there wasn't evidence of gross sales and expenses and therefore no evidence of what each partner's rightful net share would have been. And without knowing what Day's own partial interest in the funds were, you can't track it. Who's the victim here? From whom were funds taken or from what? They were taken from the corporate entity and from Karen Teats. So the corporate entity is entitled to 100 percent of the dollars that come in the door, correct? Well, correct. That's correct. And so if money is taken from the corporation, regardless of the expenses, regardless of the split, that's the value of the property taken from the corporation, correct? That's correct, but Day had a partial interest in the funds at issue that… Not until the corporation is made whole. You know, if those funds had been put in the corporation and had filtered through the corporate coffers and the expenses had been paid, at the end of the day, Teats would have had an interest in what was left over and Day would have had an interest in what's left over. So just because there's a corporate complainant in this case, I don't know that that negates Day's partial interest in the funds. You know, the theft statute provides that it's not a defense to a charge of theft of property that the offender has an interest therein when the owner also has an interest to which the offender is not entitled. So where the defendant has a partial interest in the property at issue, it's not a defense if the owner has an interest to which the defendant is not entitled. But if there's a portion to which the defendant is entitled, presumably that portion should fall outside the theft statute. So that is a defense, though. What you're saying is it's a defense of the value element. Co-ownership is a defense to the value element. It's not a defense to a charge, but it's relevant to calculating the value, certainly. We are really creating many trials within trials if we have to figure out what each person is due and owing and not just what was taken. Don't you see that we'd be creating many trials within trials? You know, for instance, if I work a month, I'm getting paid every month, and I work the whole month, and then I steal a bunch of money during that month and I get caught, do I then go to trial and ask that we have some calculation of how much was due and owing me because of my salary that wasn't paid me during the time I was stealing that money? I mean, are we going to get into that in every trial for a theft? Well, I think the State has a burden to show what – yeah, I think the State does have a burden to show who was owed what out of this business. Isn't that a vested issue for restitution? In our view, we're rewarding self-help. I think if this – well, I think that if we read the theft statute in the way that the Court is suggesting, then this results in – I mean, it results in the defendant having criminal liability imposed. For stealing what in part belongs to himself or herself. Isn't there also a concept that if you breach a fiduciary duty as a corporate shareholder or officer of a corporation that you give up any right you have in generating income from that corporation because you breached your duty to it? Well, for purposes of the theft statute, I think – I don't know that that applies. I mean, perhaps in the civil context. But for purposes of the theft statute, I think – I think that whatever portion, partial interest that the defendant is entitled to, I – But how does she become entitled to that interest? Well, she – there's no question that she has an interest in it, that that property interest doesn't just disappear because we have a corporate complainant. No, I think it doesn't – my question to you is does it disappear because she breached her fiduciary duty to that corporation? I don't believe that it does. And even if this court is – even if this court isn't persuaded that Day's partial interest in the property should have been accounted for in calculating that – the value of which the complainant was deprived, it certainly should have been accounted for to offset the amount of restitution that Day was required to pay. Does the manner in which she obtained control of the funds matter? Does the manner in which she obtained control of the funds matter? For restitution purposes? Your argument is that she had an interest in it, but she took the money in a way that was deceptive, correct? That's correct. So, for example, Justice Berg and Justice Jorgensen's questions, if a part-time employee finds out I'm only going to get paid every two weeks, it's the end of the first week, he just began the job, and he says, well, you know what, they owe me $100 for this first week, so I'll just take that money out of the till. Is he not guilty of stealing $100 because the employer owed him $100? Is that what you're saying? That's basically what you're saying. No, well, that's not what I'm saying. Certainly, you know, if you own an interest in a company, you can't just start walking off with the equipment or the furniture. Well, I think it depends on the rules that the corporation has set up. And in this case, this was a small, informal business. There were no rules or restrictions, certainly nothing in writing, and no written process for distributions. And Tease's testimony on what was authorized and what wasn't was not consistent. You know, when asked in general terms if Day was authorized to take anything out of the business through paychecks, she would say no. But then when asked about specific transactions, for example, the State's Exhibit 45 on the $3,500 draw, which took place in June of 2004, she admitted that she probably authorized that. And you still have the issue of how much Day was entitled to through her preexisting clients. And Tease's testimony, even on this issue, is not clear because she said that the fees from Day's preexisting open files were all hers. But if a preexisting client returned for new work or a new project, Day could keep all of that money from that case unless it was a significant amount of work. So there really wasn't a lot of clarity on what was authorized for Day to take and what wasn't. And by making this argument, I don't mean to suggest that there was no wrongdoing in this case. But I'm saying that the State has a burden to prove with specificity how much was wrongfully taken, and they didn't do it in this case. Certainly for purposes of restitution, Day's partial interest in the property should have offset the restitution award. Can you discuss the forfeiture aspect of that argument? Well, sure. The restitution statute provides that any restitution award that exceeds the victim's actual out-of-pocket costs is not statutorily authorized. So in this case, the restitution award was awarded to Karen Teets. I know the State makes the argument that Day's partial interest in the funds was not relevant because the restitution award went to what she took from the corporation. But the award was made out to Karen Teets personally. And if I recall correctly, I don't think that restitution award anywhere says the words Day and Teets. It appears to be made to Karen Teets personally. Wasn't the corporation long defunct by the time this finally came to resolution? Didn't this case pend for five years or something? Yes, it was pending for a long time. So how could the court then have awarded restitution to a corporation that was long out of business? Well, they couldn't have. All you had left was these two former shareholders. And all of the expenses. And all of the expenses. But Karen Teets certainly was not entitled to be the sole beneficiary of that whole gross sum, personally. I think, you know, Day would have been entitled to some portion of that. And in asking her to pay back the full almost $140,000, she is paying back what is probably part of her own partial share to Karen Teets. And, you know, and then you still have the problem of her preexisting clients. I mean, presumably the restitution award should also be offset by any income that was generated by Day's preexisting clients. And the State didn't prove with specificity what portion of those funds were. But in sentencing, clearly your client could have presented evidence on that. I mean, certainly the client has no burden of proof at all at trial. I understand that. But for a restitution amount, couldn't your client have come in and said, Here's the amounts that I received from my preexisting clients during that time period? Well, it's the State's burden to show what was wrongfully taken. And the court made a decision on sentencing based on what they thought was wrongfully taken. And in this case, it didn't account for what – it didn't account for – and we just don't know. We don't have the details on what portion of those funds Day's preexisting clients would have contributed to. A defendant in a sentencing hearing does have a burden of bringing forward evidence in mitigation. That's true. I do acknowledge that. But that is Justice Burke's question. That is a forfeiture argument that does apply when the defendant fails to present evidence in mitigation. If the court has found the defendant guilty beyond a reasonable doubt of theft over $100,000 and the defendant is now in a position to pay restitution, it's the defendant's burden to bring forward evidence that should mitigate the amount of restitution, not the State's. Okay. I do acknowledge that the defendant does have the burden to bring evidence in mitigation. Now, if I could go back to the argument for one moment, there was one point I wanted to make. There was testimony from Donna Slemp, a real estate broker who they knew through a mutual real estate client. And Slemp had testified that she was at the Day and Teats office. That's where she overheard a statement. Correct. She overheard Teats say to Day after Day had returned from a closing, you know, just go ahead and sign them. They're all yours. Deposit them. They're all yours anyway. But isn't that a credibility issue that the trial court has to consider all the testimony? And how does your argument meet the standard of review? Well, it is a credibility issue. You know, certainly there's a deferential standard on credibility issues, but credibility determinations are not unreviewable. And, you know, this case is in part about credibility standards and whether or not the court believed Teats' testimony about what was authorized and what was not authorized. But this is also about just whether all the facts were there, especially going back to this issue of the preexisting clients. We, you know, we don't know. I mean, we just don't know what portion of that income was generated by those preexisting clients. For that reason, because the value of what was wrongfully taken was not proven, we ask this court to reduce Day's conviction to misdemeanor theft of under $300. Are there any other questions? We'll have a chance to reply. Thank you. Counsel, do you wish to offer arguments? Yes. Good morning. I'm Barry Jacobs on behalf of the people. May it please the court and counsel, this is the case that did proceed to bench trial in front of Judge Sheldon, and he did return a verdict of guilty as to, I believe, 10 counts of theft. Counsel, my colleagues may have questions about other things, but if I could focus in right now on the restitution issue, why is Ms. Teats entitled to the full amount that was taken of this corporate funds? Well, as I argue in my brief, I think, first and foremost, there is a forfeiture issue in the case. The court did base its award restitution on what was proved at trial. However, the defendant raised no evidence or challenged that evidence at the sentencing hearing, nor in their motion to reconsider. Clearly, the court had the authority to award actual out-of-pocket losses to Day and Teats PC and Karen Teats. So for purposes of forfeiture, as I argue in the brief, that was never raised, and as far as the state is concerned, the argument should have been forfeited. However, this court finds that it is not. Ms. Teats was the successor of this law firm. She was the one that remained with the license to practice law. She was the one that remained with all of the bills and obligations that the firm had incurred during its brief period of functioning. Was the corporation still in existence at the time of the restitution order, if you know? I'm not entirely certain. If I don't believe it was, I believe at the time she had already obtained a civil judgment against when she testified at sentencing, I believe she had already obtained a civil judgment against the defendant. Did she testify to the amount of the civil judgment she had received? Was it the $137,000? It was roughly $200,000, if I recall correctly, yes. But this court felt that there was only sufficient proof for the $137,000 and somewhat cents. So to that extent, I guess getting back to the point, she was the one with all the obligations and expenses and still operating in place of the firm. It was she who had been damaged, actually, from those expenses. And as I believe Justice Jorgensen indicated, the firm was defunct at the time. I think it was long defunct, actually, at the time of sentencing, now that I rethink it. There was no—the court had no power to order an award restitution to a defunct law firm. Should the court have considered what the defendant's interest in that income was? With regard to the class of the offense or with regard to the restitution? No, the restitution. The restitution? Yes. It's the same position that the court did consider both in its finding of $137,000 at trial and in the awarding restitution that it didn't take into account that the defendant did have preexisting clients. They generously allowed that she had possibly up to $5,000. You missed my point. If we get to the $137,000, should the trial court have considered that after the bills were paid, that defendant Day had some interest in that quantum of money? In other words, if $100 is paid back to the corporation, the bills are paid and $50 remains, why isn't there a $25 credit to Ms. Day as well as $25 to Ms. Teets? Well, one thing that is missing from this case was a final accounting of the firm. Whether it's missing or not, because I know it's not in the record, my question is, should the court have considered that? There's a possibility that she was entitled to some offset. The other thing that would also be missing would be the amount of salary that she had actually taken from the firm. So, yes, perhaps the court should have considered it, although I don't think the information was before the court presented by any party about what that interest may have been. The defendant, as I said, didn't offer any evidence. The court was left with this figure. So basically your argument is the defense forfeited by not raising any evidence of litigation? Yes. Okay. With regard to the class of defense, however, it's the state's position that this is no defense to the element of value. And I believe Justice Burkett's analogy to an employee who is owed a certain amount of money and steals a certain amount of money and then claims that his theft should be offset by the amount of what he was owed is apt. Section 15-2 of the theft statute does define what an owner is in this case. The language differs slightly from the criminal damage to property statute, which talks about the property of another. In this case it says the property of the owner. Section 15-2 states that an owner means any person other than the offender who has possession of or any other interest in the property involved, even though such interest or possession is unlawful and without whose consent the offender has no authority to exert control over the property. Based upon the plain language of that section, which isn't included in the criminal damage to property statute, it's the state's position that this section speaks directly to the case at hand where Ms. Tietz may not have had a lawful interest in the entire amount of property. However, her interest was superior to that of the defendant in terms of the charge, in terms of the charge, the valuation of the charge. The defendant's claim that had the money been filtered through the corporation, there may have been some money entitled to Tietz is untenable in that the defendant is the person that actually removed the money from the corporation and there was no way for it to be filtered through. There are no further questions. Questions? Thank you. Thank you very much. You wish to reply? No. On the question of restitution, it's our position that because the restitution award exceeded Tietz's out-of-pocket costs, the award is statutorily unauthorized and thus void. How do we know that? How do we know that $137,000 was more than her out-of-pocket? Because there's no question that Day would have been entitled to some of that. I mean, they were supposed to split everything down the middle, according to Tietz's testimony. So, you know, so there's no question that she would have been – that Tietz was not entitled to the whole gross sum. A court has statutory authority to determine out-of-pocket losses, correct? And its role is fact finder. Well, I mean, in the restitution statute, I mean, the court has statutory authority to determine out-of-pocket losses for an account that a person was convicted on. I mean, many of the cases cited in the briefs talk about accounts that were dismissed. So a court does not have statutory authority, according to cases. Therefore, those orders were void because there's no statutory authority to have an order of restitution on something that's been dismissed. Correct. We don't have that here. We have accounts or counter-accounts where the defendant was convicted, and the court has statutory authority to determine what exactly is the out-of-pocket loss. Now, you're arguing that this out-of-pocket loss was determined improperly. How is that void? I mean, how is that judgment void? Because we're attacking how the court determined this out-of-pocket loss that it clearly had jurisdiction and statutory authority to determine. Sure, but what – I mean, whatever – I mean, whatever money was left over at the end of the day, the agreement was that Teats was not to get 100 percent of that. So to award the whole gross sum to Teats, I mean, it's – Well, it may have been right. It may have been wrong. Correct. I'm talking about forfeiture and whether or not this order was void. I mean, your argument is that we get around forfeiture because it was a void order and we attacked any time. What I'm saying is maybe the court was wrong. Maybe the court miscalculated and should have calculated this. It was never brought to the court's attention. My understanding is that sentencing – the defense counsel never raised this, so – or in the motion to reconsider. So if the court wasn't aware of it, then still maybe the court was wrong. But how do we get around the forfeiture by saying this is a void order? Well, because at the end of the day, I think you still have – you still have – I'm sorry? The question is how is this void? Not what the agreement said, but how is this order void such that the fact that it was – this issue was forfeited can now be reviewed? Why is the order void? Not – for the sake of argument, we'll assume you're correct. It was a 50-50 split. Sure. She's entitled to a credit. But how is what the court decided void? Because – Not wrong, but void. Because what we have is something other than a 50-50 split. So we know – I mean, we know that Teets – Teets was awarded the whole gross sum. We don't know what Teets actually lost, though. We don't know what clients she may have lost because – That's true. We don't. I mean, and this also – Maybe her out-of-pocket loss was greater than $200,000. We won't know. That's true. And I guess that point also goes to the sufficiency argument. I mean, we don't – none of these details are here. So if the court has no further questions. Thank you both very much. Thank you.